Good afternoon, and may it please the court, my name is Greg Mack, counsel for the Attorney General, and the appellants in this case. The government will be reserving approximately five minutes for rebuttal time, your honors. The government is the prevailing party in this case, and the government requests that the court- At least you hope you are. Excuse me, your honor? At least you hope you are. Well, we believe we are after the district court vacated the injunction in this case, and basically put this case to rest. That's part of what we're here to find out, right? That's correct, your honor. And, again, we ask that the court reverse the district court's award of EGFEs in this case. The 2003 injunction in this case, again, was vacated by the district court. And, again, that makes the government the prevailing party in this case, particularly after the Supreme Court granted the government's case and the JAMA case, and then we came to this court and asked the court to vacate the injunction by the district court. Would you clarify for me, what, when the case started out, what was the relief that they were, that the plaintiffs were getting? The objective of the litigation was permanent cessation of removal operations involving Somalia. And that's- That's certainly a large chunk of it for the class action part of it, but didn't they also have a claim with respect to the individual defendants who were in custody at that time? They did have the individual habeas claim, but that's inextricably intertwined with the removal case because- Well, let me ask you this. It was a separate claim, correct, based on a due process, alleged due process violation, of a Zevedes-type violation? A Zevedes is statutory. It's not constitutional. It's a statutory interpretation. Well, then, I don't care if you call it statutory or constitutional. It was a separate claim. Isn't that right? No. It was intertwined with the removal case. Let me ask you this. If they didn't, if they hadn't brought their statutory arguments, could they have just brought a Zevedes claim? No, they could not. So they would have been out of court. Even if they had been in custody. Even if they had been detained for more than six months. Even if they- Let's say they had been in there a year, and there was no reasonable prospect that they were going to be removed from the country, any other country, I don't care where in the world. You're telling me that they could not have maintained a Zevedes claim. A Zevedes- Is that the government's argument? The Zevedes claim is intertwined with the removal claim, because they have to show that the removal is not reasonably foreseeable in the future. But that's, again, tied to the removal issue. If the government can remove the individuals and show that there is a likelihood of removal in the future, then there's no Zevedes claim. And Zevedes doesn't say after six months you get released. It says the government has to make it shown. In the end, what happened to what Justice Breyer refers to as the habeas claims? With respect to the habeas claim, the district court vacated the injunction. The class certification went away before the district court. And the habeas detention claims were dismissed without prejudice by the district court after the district court vacated. Is there any particular reason why she did it without prejudice? I believe so, that if the Petitioners come back into custody in order to effect the removal, they wanted the ability to- So they're still here in the country. Is that correct? They're still here in the country. What's the possibility, the probability? I don't care how you want to phrase it, that they're going to be removed. There is a probability that they're going to be removed. ICE certainly has objectives and programs in place to try to remove aliens in this regard. Right now, the priority is removing aliens who have valid travel documents with respect to Somalia and are voluntarily cooperating with- Do you know whether anybody's been removed to Somalia since JAMA? Yes, there's been approximately three individuals removed to Somalia after the JAMA case. But these individuals are still here. Are they detained, or are they on parole? The four Petitioners, they were granted release, and they are under order of supervision. I talked to my client recently. I believe two are still reporting under that order of supervision. I believe two of them have absconded. They're not reporting. But they are, for all intents and purposes, outside of ICE custody. They're not detained physically at this juncture. The conditions of the release, I suppose, are subject to being recalled at any time, if- If the government- If, wherever it is, and the government decides, well, the conditions are right now for removal. That's correct. And that would be a discretionary judgment for the government to make as to when it is right, with respect to the relations involving Somalia and what's going on in the ground in Somalia, when it's right to remove those individuals. It's a discretionary determination by the government. Now, changing the focus just a little bit, as you know, there are a number of cases that say you don't need to get complete relief in order to prevail. You have to prevail on, you know, just certain important matters. And I think, in particular, there's even a case that says if you get released, right, from custody for a specified period of time, that's enough to make you prevail in the party. Are you familiar with those cases? Yes, Your Honor, but that- How do you distinguish those from this case? That relief should be discreet and finite. It should be part of the objective of the litigation. While the release was part of the objective in this litigation, the release only came about because the district court said that they were not subject to removal to Somalia. So absent relief on removal to Somalia, there's no relief on the Zobitis claim. So it's not discreet in that regard. But the problem with that argument, they're still on release, right? They're still on an order of supervision subject to being picked up for removal, Your Honor. And, again, those cases, I think also the Court is- Yes, it is. It's kind of speculation. I realize, you know, looking back. But, you know, is it – would it not have been for the habeas petition, would they still be in custody today? I mean, are all Somalians – have all Somalians been released, or- No, not all Somalians have been released. It happens on a rolling basis. There's an order of removal that's entered by the board or the immigration judges, and then they're picked up and detained, and after they may bring a habeas petition or because of- Can you tell me with any degree of certainty that any of these petitioners would still be in custody today had it not been for the habeas petition? Well, they would have been removed if it hadn't been for the habeas petition. The government was enjoined from removing them. They were ready – you were ready to put them on the plane when the district court judge entered the- That's – we had a- They were ready to go and just ready to take off. They were ready to go. At the time that this litigation kicked off, around in November, December, when I got involved, there had been a plane that was reserved for Oakdale, Louisiana, and had- The same thing could have happened to them that happened to Jama, you know. Excuse me, Your Honor? The same thing could have happened to them that happened to Jama. And we know that when they got to Somalia, they might have had to turn around and come back home. That's certainly after the fact, after the case had gone to the Supreme Court and the government's removal operations had been ceased by the district court erroneously. And those are now collateral and post-judgment issues as to what happened with respect to Mr. Jama that did not occur because of any judicial stamp that Mr. Jama was returned to the United States after the attempt to remove him. That does not have the judicial stamp required by the Supreme Court's case in Buckhannon. I think the case also alludes to when EJIA relief is available short of permanent relief, is the Watson case where you had the case of a preliminary injunction, and this court had said that that's sufficient for an award of EJIA fees. But in that case, the preliminary injunction did the work of a permanent injunction, if you will. It did the work that the EJIA applicant sought, that the administrative, the note or the record, the administrative record wouldn't have been used, and the case became moot. But the relief didn't become lost to the EJIA applicant because of a loss of entitlement. It became lost because the case was over. It was moot. That's not the case here. The preliminary injunction, the injunctive relief was defeasible. It was not irreversible. It was not permanent. It's not the kind of relief that the Supreme Court and the EJIA statute would support. Well, with respect to the relief, are you saying that it's not – it was, how would you say, I guess, really just tentative because they could go back into custody at any moment? Is that the argument? They could go back into custody at any moment if the government decided to pick them up and remove them to Somalia. Again, that's – again, I believe – Therefore, they didn't really accomplish anything. They didn't accomplish anything in that regard. They got short-term release until we could determine the statutory rights between the parties. That determination was decided in favor of the government, and that's why we're the prevailing party and the Petitioners are not. The government being out of custody for any period of time is, you know, significant of anything. They're out of custody because their removal operations were deemed to be inappropriate by the district court. That was now reversed by the district court. Now it's simply a function of determining when and whether we should remove them to Somalia. Ultimately, one day they will be removed. But the release – Did your client give you any including as to how likely removal is and how soon? The likelihood of removal right now is with respect to those who have valid travel documents and are voluntarily at this juncture removing – want to remove themselves to Somalia. Right now, involuntary removals are not going on to Somalia right now. Again, that's a function of the department's discretion and its functions and what it deems its objectives to be at this particular time, Your Honor. When you say department, by the way, are you now talking about the – Department of Homeland Security. Department of Homeland Security, Your Honor. That's correct. Now let me just ask you something about one of the 28-day letters you filed. You attached the order of the district court. That's correct, Your Honor. Of April 26th, and that order refers to something it calls the final notice that was supposed to be sent to all class members. But that notice is not a part of the 28-day letter. What did that notice say that was required to be sent? It simply laid out the ending of the litigation, that the injunction had been vacated, it ceased, and the injunction was no longer in effect. That's all that was. And that may still be on the district court's website, Your Honor. Mr. Mack, you seem to be suggesting that the government's position is an all or nothing position. Either you're the prevailing party or you're not the prevailing party. Of course, from your perspective, you are the prevailing party. Judge Hashima has mentioned, not with that specific case, but our Oregon Natural Resources case, makes it very clear that if relief is granted in some portion of the claim and a party prevails on that, even though they don't prevail on the rest of the claim, there can be relief. I'd appreciate your helping, certainly me, understand the government's position with respect to this detention issue. It's been touched on by my colleagues. But, I mean, the reality is if the government – are you saying that they didn't accomplish anything, that because you can go back and pick them up at any time, in effect, nothing happened, there is no basis for a claim? There's no judicial stamp on anything that they have received, Your Honor. That is part of the Buchanan analysis. There must be some judicial stamp on what they received. And the detention relief that they obtained is tied to the erroneous statutory determination by the district court. With respect to the larger point on your question is the Carbonell case. And Carbonell says, look, there was a discrete part of that case where the petitioner obtained relief, and therefore they're entitled to each of these in that regard. But that was a discrete part of the case. A stay of deportation was sought. The government stipulated to the stay of deportation, and that stipulation was encompassed in the court's order. That is not the situation here. The relief on detention is not discrete. It's intertwined with the inherent removal determination by the district court. And, again, the government has prevailed on all fours in this case. I'm confused by that, though. Judge Pius mentioned the issue. You know, based on Zabetis, if these folks had been in detention and you didn't seek a class action, and you didn't seek an injunction, but somebody brought a habeas corpus action saying, I've been in detention for more than six months, do I understand you to say they would have had no relief? They would have had no relief because there would have been a removal operation involving Somalia. Until it was erroneously curtailed and ceased by the district court, removals were ongoing with respect to Somalia. And so we would have went into the district court and said, Your Honor, dismiss this habeas petition because there is a reasonable likelihood of removal in the reasonably foreseeable future. Well, what about relief on the basis of, I think, what was it, Zadveus? That kind of relief in that situation? Well, no, they wouldn't be able to get Zadveus relief under the detention statute, U.S.C. 1231, because we would, again, have said there is a reasonable likelihood of removal in the reasonably foreseeable future. And until the district court ceases the removal operation, they, again, have no Zabetis claim. The Zabetis clock doesn't start ticking until the district court says there could be no more removal operations to Somalia. Well, there was a reasonably likelihood that, you know, the reasonable Not in the reasonable foreseeable future were they going to be removed. That was the critical question. I can say the Zabetis involved a case where there were ongoing operations, but they just went on and on and on and on and on. And I forget, the guy was in jail like a year or something like that, and the Supreme Court said you can't do that. Well, the Supreme Court said you couldn't do that in this sense. There were ongoing negotiations between the U.S. government and the foreign government, and they didn't seem to have any fruition. They didn't seem to have any outcome. But in this regard, in Somalia, there was an ongoing removal operation where people were being removed to Somalia as a matter of fact. It wasn't a matter of negotiation with a government in Somalia because, after all, there was no central functioning government in Somalia. So there was no government to, you know, negotiate with as was the case. So why is there a problem today about removing folks to Somalia? Why can't you just, you know, get out the plane? I think, again, it's a discretionary. Put people on the plane and just fly to Somalia. I think two things. One, it's a discretionary judgment by the Department of Homeland Security when and where it puts its removal operations. So are conditions in Somalia worse today than they were at the time of, you know, this complaint started? I forget when that was. That was back in 2002. 2002. I can't say that it is. Are they better today? I can't say that it is. I think there's, again, the same thing of no central functioning government in Somalia. And, again, we have put individuals on planes to remove them to Somalia. Who have documents. By the way, if there's no central government in Somalia, where are they getting their travel documents? That I don't know. They may have had them before they came to the United States and retained them while they were in the United States. And Davao Airlines is the one who really needs the travel documentation. They want the official valid travel documentation before they let somebody get on a plane in the United States, before they head on over to the United States. And the United States couldn't just, you know, use a United States plane. It could if it so chose to. That's why I say it's a discretionary judgment as to whether and when it decides to put its removal operations points. But you're not telling us today that there is a plan in place to remove all Somalians, either those who wish to go voluntarily or those who don't wish to go voluntarily. I can tell you there's a removal plan in place to remove individuals to Somalia generally. And that individuals who have a valid travel document and a desire to go to Somalia, that is in effect right now. As to whether there's a broader plan, that's within the department's judgment, discretionary judgment. Okay, so I grant you it's in their discretion. But I'm asking you, have they formulated a plan today that contemplates that, you know, in the next 90 days or the next 180 days they're going to start removing Somalians who don't want to go back, you know, involuntarily. They're going to send them back. Your Honor, I want to be mindful that removal operations are a sensitive matter, and people may flee if they learn that there is a removal plan in place. We have the removal authority. It was deemed to be authorized under the statute in question here by the Supreme Court. The government has the ability to remove these individuals. And I don't want to say too much about current plans. Well, I guess the first time they do it, I mean, it's going to become well-known in the Somalian community. But it would have been off and running, and the government would have been acting out there, and they would have learned it through that fashion rather than some – Do you want to say something, Your Honor? Yes, it's a statement by counsel. I'll reserve it. Can I just ask one question before you sit down? Mr. Mackey, I want to be sure I understand your argument. You're saying that Zebedes doesn't apply here based upon the habeas claim for the detention because there was an ongoing removal operation at the time, therefore the case is distinguishable, right? That's correct, Your Honor. Until we were ceased or our removal operation was terminated, there was a removal program in place with respect to Somalia. And you were stopped because of the injunction, which was later dissolved by JAMA. That's correct. We did not do anything voluntarily in this case, and the district court had to in each step order that our removal operation was terminated. And at this point, if the government chooses to do so, it can initiate the operation again, therefore nothing has really been accomplished by the petitioner in this case. That's correct, Your Honor. I'll reserve the balance. Let me ask you that. The statement that you had an ongoing removal operation in place, is that documented in the record before the district court at the time she granted the injunction? Yes, it is, Your Honor. I believe it's reflected in a declaration that we had in the JAMA litigation in Minnesota that talked about the removal operation. If I were to get the district court record in this case, would I find that plan? You would find that plan in the district court record, Your Honor, yes. Okay. And I'll go back and find it for you as well. Okay. Thank you. I'll reserve balance of the plan. I'll make sure you get your time. Good afternoon. May it please the Court. My name is Amanda Bean, and I represent the petitioners in this matter. The petitioners, having achieved some of the benefits. Could you just keep up your voice? Sorry. The petitioners, having achieved some of the benefit in this litigation, and a material alteration of the legal relationship between the parties that was judicially sanctioned, are the prevailing parties. The government has attempted to skew this case as if it only involved a statutory interpretation question, as if it were a declaratory judgment on the statute. This litigation could have looked that way had the government agreed to stay deportation and release petitioners from detention while the underlying merits were being heard. By the government's own admission today, by looking at the amended petition and the docket, that was not the case. Ms. Bean, are you conceding that the attorney fees expended by your side on everything but the detention matter are not at issue? You're not seeking those? Is that correct? No, I'm not intending to concede that. The attorney's fees have to do with staying deportation while the underlying merits could be heard and a release from detention, and they're all tied up together. The government sought a stay of deportation at every step of the way. The petitioners were detained. They were ready and willing to deport them. So part of the benefit sought in this litigation was staying deportation until this case could get in the courts and be heard. So you're also an all or nothing. You're basically saying, notwithstanding JAMA, which destroyed the larger portion of your case, that unless this court is willing to split the baby, you want to roll the dice and go for the whole enchilada? Is that what you're saying? I think the government has presented this as an all or nothing. Or are you presenting it that way? I think that when you look at what was accomplished in the district court, so much of it was tied up in getting emergency relief and relief from stay while the merits were being heard, that ultimately all those fees are really tied up together. But at the very least, we prevailed on getting an immediate stay. That stay was extended to get the merits and a release from detention. But the United States Supreme Court, through JAMA, reversed what you did, however commendable that may have been. And the fact of the matter is, we're talking about who the, in quotes, prevailing party is. You can't be a prevailing party on an issue that was reversed by the United States Supreme Court. That's why I want to be sure I understand whether you're really looking for an all or nothing deal as well. Because you may have some argument with respect to the detention. But at least I would think you would have a few people interested in listening to an argument that you prevailed on the class action, on the injunction, even though it was in place for a time, because the U.S. Supreme Court reversed it. And there are many cases that suggest that getting an injunction alone is insufficient for sustaining this cause of action under EHAA. That's true, but I think those cases are distinguishable from here. I think looking at this court's precedent in Carbonell, it's clear that getting the stay of deportation, along with the release from detention while the underlying merits be heard, is enough to convert prevailing party status. And Carbonell specifically says it doesn't matter what happens in the underlying merits. In fact, we never know in the Carbonell decision what actually happens, how that claim comes out. Now, I think the government's trying to say, well, because these two proceedings were together rather than divorced as they were in Carbonell, that that somehow alters the analysis. But that's saying that's turning on its head Supreme Court precedent, which says you don't have to prevail on every claim. You only have to get some of the benefits sought in litigation. And I think what they're actually asking for is some sort of central issue test, which was rejected by the Supreme Court in the Texas State teachers' case, in favor of achieving some of the benefit of the litigation. Well, that doesn't necessarily mean that you're entitled to all your attorneys' fees, correct? I mean, for example, here, I'm going to kind of just conceptually, let's just assume that you were the prevailing party on the habeas petition, the release from detention. Let's assume you put in a lot of effort, the injunction, the briefing. You spent, I don't know, 50 hours on it, however many hours it might have been, okay? And then you spent another discrete chunk of time trying to get that class certified, maybe another 50 hours, a lot of work. Why should you get attorneys' fees for that chunk of time spent on the class action? Well, I actually think that you have to not only look at the release from detention, but the stay of deportation, which, while the merits were being heard. And although this ended up being a permanent injunction, which was dissolved, it had the effect, like in Carbonell, like in the Tenth Circuit case in Kopanek, of staying deportation while the petitioners got the very substantial relief of just the release from detention during that time. And as we can see, that relief has ended up being very significant. They were in danger of getting the class action. What did the class action aspects have to do with getting, you know, getting your clients released from custody and staying in their deportation? Well, they achieved that benefit not only for themselves, but for thousands of Somalis across the nation who were going to be facing imminent deportation. And this is not deportation. But some of those other, you know, their claims were here. Your clients' claims are really discreet. They were in court. There was a court order that changed the relationship between the parties, despite what Mr. Mathis said. Right. And that's true. So why does that work in this context where, effectively, you know, the class action was just taken away? Well, the class action was brought because after the government was enjoined from deporting the named petitioners, it started getting other Somalis across the country detained and ready for deportation. So the state deportation had an effect on Somalis across the country. But the class just wasn't limited to the – as I understand it, the state just – the class action aspects were not just limited to those who were in custody. No, that's true. It would have barred. But, I mean, we don't know how many people were in danger of imminent deportation to a country where certainly they could have suffered bodily harm or even been killed. That's pretty significant relief. And – How do you respond to Mr. Mathis' argument that, you know, all he really accomplished was just disrupting their plan of operation of removing some Somalians to Somalia? I mean, the plane was ready to go. I think that ignores – Because you didn't accomplish anything. Right. I think he's trying to characterize it as a procedural victory. That means nothing. But I think that ignores this Court's precedent in Carbonell, which clearly says staying deportation so you can be in this country and have your underlying merits be heard and being released from detention during that time is significant relief. It's ordering the government to do something that they otherwise would not have done. It's a material alteration of the legal relationship, which is judicially sanctioned, and it's a significant part of what petitioners sought in this action. How do you respond to the concept that, in effect, what really changed in this case, aside from JAMA, is that the government really can't get people to Somalia? This concept of valid travel documents when there is no government is kind of unusual. And so they're not able to get people out, apparently. Isn't that, in effect, the prophylactic result of this? The government can't do it. They can't get people out. It wasn't necessarily what you did. I'm just arguing this. What's your issue? What do you feel about that? I think that goes to the materiality of the alteration of the legal relationship here. This was not a two-week stay deportation for somebody headed off to France. This was a significant stay of not being sent to a war-torn country where the record clearly shows they were going to face probably bodily harm, possibly death. And the fact that that was prolonged for so long, that stay, and there's still problems removing and deporting them, I think goes to the materiality of the alteration. Do you agree with Mr. Mack's position that, at any time, the government could pick up your clients and deport them? I think it's hard to – I'm just talking about legally. Is there an order in effect right now from the district court or anywhere else that would bar them from doing that? There is not an order, no. So, in effect, they're out of detention not because of an order but because the government chooses not to pick them up, but probably because they can't get them there. They're not in Somalia today because of what was accomplished in this litigation and because their underlying case was charged. Is that true now? I'm sorry? That may have been true initially, but is it true now? Well, we're – Let's just say since John and since the case was sent back here, remanded to the district court, and the district court dismissed the detention action, they're out of detention not because of a court order, a change in a legal relationship, but rather because of the decision on the part of the government not to pick them up. Isn't that correct? Yes. But I think under Carbonell, and I think the Tenth Circuit is in agreement in Kopanek, and the Second Circuit is in agreement with Vecchio, just the fact that they stayed due to deportation and were released from detention  So it's not the ultimate result. It's the interim result. If they were out for 30 days or 60 days or 90 days, that's enough to make you the prevailing party? Is that your argument? Well, I think in Carbonell that is what it says, but I think that there's a safeguard against any time there's some sort of preliminary relief or stay in the sense that it's got to be a material alteration of the legal relationship between the parties. Also, the government has the option – has some other options here. They can agree to a stay of deportation while merits are being decided. They also have the opportunity, if somebody gets prevailing party status, to show that their litigation position was substantially justified. And that argument has been waived in this case. Let me ask you – get the statutory interpretation argument that we dealt with in JAMA – I mean, in this case on the merits from the Ninth Circuit opinion, our opinion. Suppose that you were back at the district court and they had been in custody for a year, let's say, and all you want to do is get them out. Could they have had a viable Zebedes claim on their individual habeas petitions, if that's all they had pursued? I don't see why not. I don't see why there wouldn't be a viable claim there. If they had been in detention and there was some – Well, you know, it's tied up in whether or not there was a reasonably foreseeable chance that they would be removed in a reasonable foreseeable future at that time. So Mr. Mack says to me, well, you know, they would have been out of here. Right. And I guess we don't know that. I mean, they've tried to get JAMA out of here, and they're still running up against these same issues and claims. So I think there's a possibility they would have had a viable claim. Removal to Somalia was never easy. It's probably more than a viable possibility. Yeah. I mean, the record shows removal to Somalia has never been easy. It's always fraught with difficulties. Let me pursue a different line of inquiry with you. One of the problems I have with this case is it's not your fault, but, you know, this order was issued by the district court over three years ago now. And I don't know why it took so long to get up to the point where we are having the argument today, but it was lost somewhere in the cavernous records room of either the district court or the court of appeals for several years. No one knew what happened to it. But the basis of the order by Judge Beckman was that you had prevailed because you got that class-wide injunction, as well as the, as it says here, court ordered three of the four named petitioners released pursuant to that bias. So that was a relief on which the district court predicated its, I think it's sort of implicit finding that you're the prevailing parties. Now, those conditions don't prevail anymore. I wonder if the Supreme Court had listened to the government and not addressed the motion for attorney's fees until after the case was over, it would have made the same order. You know, I kind of highly doubt that. In other words, if we were sent this back to Judge Beckman today and said, well, we want to reconsider the order awarding attorney's fees, I'm not sure what she would do. I don't think you are either. But so given that circumstance, you know, what we're doing here is really kind of artificial. And as far as I can tell, the strongest argument that you have, that you're still the prevailing parties, in spite of what's happened in the three and a half years since this order was issued, is that you've achieved a release from detention for three of your clients, right? And they're still, you know, not in detention. But to me, that goes up against, you know, these cases that say, well, preliminary injunction doesn't do you any good if in the end you don't win. Although I understand Carbonell is a little different case. But in Carbonell, all that was issued in that case was a state. That's all that was issued. Here, you know, you asked for the relief from detention as sort of a, you know, part of the relief you're asking for for the class-wide state. So I don't know how you distinguish this case on the limited relief you got in the interim. Now that the basis for that relief is gone. When I say the basis, there's no judicial order in existence anymore that says your clients should be left free of detention, right? So what is the strongest case you can cite us that, under those circumstances, you still are entitled to be treated as a prevailing part? In other words, that the district court's finding that required should be upheld. Under the circumstances where the underlying merits were. This case is in a unique procedural posture. But I do think had the petition been brought later or held in abeyance, that there are still the significant issues of a stay of deportation and a release from detention. And I think getting that stay to be heard in court is a right that can't be underestimated. And although Carbonell and Kopanek might be distinguishable on the fact that there was sort of a separate administrative action, I think that there's still strong precedence on that issue. And I think we can look at the D.C. Circuit case in Grano, which is not an immigration case, but plaintiffs were seeking to preserve a historic building and have an initiative voted on. They had lost in the courts on the merits of all that. They drafted this initiative. It was going to be on the ballot. And they got an injunction prohibiting the destruction of the building until that vote could be had. And the D.C. Circuit said just the opportunity to have that vote, just the right to have that vote, no matter the fact that later the building was destroyed anyway and they lost everything, is enough to confer prevailing party status. And I think the fact that these claims were all in one petition and wound together in terms of getting the emergency stay and the release from detention, the ultimate determination on the merits, shouldn't detract from the fact that some of the benefits sought in the litigation was achieved. Let me ask you this, in light of what Judge Tshishima was just saying a moment ago. Do you think it might be prudent for us to send this back to the district court to let the district court, you know, reexamine the prevailing party issues in the initial, you know, get-go? I mean, we sent back the injunction to her to decide whether or not to vacate it. I think that's a possibility. I mean, wouldn't it be, if Judge Tshishima, just listening to Judge Tshishima, he points out that, you know, there were two parts of the order, the stay and the release and then the class-wide relief and the statutory interpretation. And the one leg has been taken out. The possibility of what's left would support the prevailing party, but maybe under all the circumstances, we should let her make that initial call. I think that's certainly a possibility. I think it's been presented as an all-or-nothing position by the government. But I also think that, you know, looking at what was done, the emergency relief and getting that injunction extended was so tied up in everything that was done that it's not necessary. You know, the stay of deportation and the release on the merits, that work was such a significant part of what was done. Have you made any determination at all about what percentage of the fees that you are seeking pertain exclusively to the detention issue as opposed to the class action and injunction issue? I have not gone back and done that. Any ballpark? It was a large team working very quickly. It's hard to say how much was tied up with those detention issues or getting emergency. If you're going to throw in the emergency stay deportation, I mean, you're talking well over 50% would be tied up in just getting a stay of deportation and emergency relief. That's, you know, far more intense than addressing a statutory interpretation question. So it sounds like what Judge Paz was suggesting, that at the very least, if any attorney fees are to be awarded at all, it sounds like the district court needs to do some fact-finding. Because we're certainly not in a position as an appellate court to make any determination. There's nothing on the record that would indicate this. Unless you're going for the whole thing. I mean, there's a declaration supporting our fee petition, but there's nothing where, you know, we've made an affirmative statement parsing this out. I think we've covered the basic standard that the Petitioners achieved some of the benefit in litigation, and they achieved a material alteration of the judicial of the legal relationship between the parties that was judicially sanctioned. So, if there are no more questions, I'll conclude. Thank you, Mr. Mapp. Mr. Mapp, you have a few minutes. Thank you. Just a few points, Your Honors. I think we should be clear here. The aim of the litigation in this case was the wholesale permanent cessation of removal operations to Somalia. It wasn't a stay of deportation or removal pending proceedings. It was the wholesale. The district judge, you know, did say specifically that part of what she ordered was that three of the four named Petitioners be released. That's part of the release you want, right? But the district court could only release those individuals because there was a conclusion that they could not be removed to Somalia, a conclusion that we now know to be wrong and erroneous and reversed by the Supreme Court in the collateral case, in the Chama  case. With respect to sending this case back to the district court, I think the question of law here is an important one. It calls out for appellate resolution. I think you have the Watson case that talks about what happens with a preliminary injunction that has grants, discrete, permanent-like relief. This is not the Watson case. It's the flip side of the Watson case. So, I think it calls out for appellate resolution rather than sending the case back to the district court. And, finally, collateral post-judgment issues that impact on the government's removal operations to Somalia lack the judicial stamp that's required by Buckhannon. Again, what the government and what the Department of Homeland Security does with respect to removal to Somalia is a discretionary issue. Those things occurred post-judgment here and are collateral to the case. If we're going to decide, you know, that question, it seems to me the strongest case in favor of the plaintiffs is the case that's being referred to. That's our Carbonell case, where, you know, there was only interim relief. And, in fact, the court there said it really doesn't matter if we ultimately get any relief or not on the merits. You've had this, you know, stay for this period of time, and that's enough to make your prevailing party. Why isn't that control here? The aim in Carbonell was that discrete stay of deportation so that the individual in Carbonell could remain in this country while the board was considering that individual's motion for reconsideration because the board had another rule that said if an alien leaves the country, the board loses jurisdiction over the case and there can be no more administrative proceedings. So the aim in Carbonell was a stay of deportation. That was a discrete point that was sought by the alien in that case. In addition to Carbonell, the government voluntarily stipulated to the stay of deportation, two things that are lacking in this case, Your Honors. With that, we submit that the district court's order of removal or, excuse me, order of each of these in this case should be reversed. Thank you for your time. Roberts. Thank you, Mr. Mannix. Thank you, counsel. We appreciate the argument for everybody. It's very helpful, very interesting case. Thank you very much. The matter will be submitted. Thank you.
judges: Tashima, Paez, Smith